**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Plaintiff,**

v.

**COVENANT COAL CORPORATION, et al., Defendants.**

**Civ. A. No. 90–0086–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

March 27, 1991.

James J. Vergara, Jr., Vergara & Associates, Hopewell, Va., Robert Stropp, Jr., Judith A. Scott, Gen. Counsel, UMWA, Daniel B. Haviland, Yablonski, Booth & Edelman, Washington, D.C., James M. Haviland, McIntyre, Haviland & Jordan, Charleston, W.Va., for plaintiff.

Robert M. Galumbeck, Deannis Simmons, Dudley, Galumbeck & Simmons, Tazewell, Va., Gardner T. Courson, Atlanta, Ga., C. Matthew Keen, Raleigh, N.C., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an action by plaintiff, United Mine Workers of America (hereinafter "UMWA"), against defendants, Covenant Coal Corporation and its officers and directors, alleging that in violation of federal and state law, defendants tortiously interfered with contract rights established under the National Bituminous Coal Wage Agreement (hereinafter "NBCWA"). UMWA alleges that defendants "intentionally and maliciously caused" various employers that were signatories to the 1984 NBCWA "to abrogate and repudiate their obligations" under that agreement and "to recommence operations under different corporate names." Defendants are officers and directors of the signatory employers and Covenant Coal Corporation, a company that these officers and directors allegedly formed to help carry out their plan. The newly formed operating companies have not been named as defendants. None of the defendants are parties to the NBCWA. Jurisdiction over the federal tortious interference claim is asserted pursuant to § 301 of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and under 28 U.S.C. § 1337. Pendent jurisdiction is asserted over the state law claim. The court holds that the authority of federal courts to develop federal common law under § 301 of the LMRA is proscribed by the express language of § 301, which extends jurisdiction only to "suit[s] for violation of contracts between an employer and a labor organization...." As only a party to a contract can violate that contract, federal courts possess no authority to develop federal common law under § 301 for tortious interference by a non-signatory. The court also finds that UMWA's pendent claim is preempted. UMWA's § 301 claim and its pendent claim will, therefore, be dismissed.

## I

In *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the United States Supreme Court held that in suits under § 301(a) federal courts must apply federal common law, which they "must fashion from a policy of our national labor laws." *Id.* at 456, 77 S.Ct. at 918. There is a split in the circuits as to the scope of the power to fashion a body of common law. Some circuits have limited § 301 suits to contract enforcement actions. *Baton Rouge Bldg. & Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879 (5th Cir.1986); *see Loss v. Blankenship*, 673 F.2d 942, 948 n. 6 (7th Cir.1982). In contrast, other circuits have expansively construed the scope of power to develop federal common law under § 301. *Wilkes–*

*Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120,* 647 F.2d 372 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982); *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm.,* 707 F.2d 1067 (9th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984); *Local 472, United Ass'n of Journeymen & Apprentices v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982). Even within this district, it has been held that federal courts have the authority to develop federal common law under § 301 for tortious interference with contractual relations. *See International Union, UMWA, v. Eastover Mining Co.,* 623 F.Supp. 1141 (W.D.Va.1985).[1] This court reaches a contrary conclusion and holds that its power to develop federal common law under § 301(a) is limited to contract enforcement.

The prospect of an individual not being held accountable for inequitable conduct lies at the heart of the development of the federal common law of tortious interference under § 301. In *Eastover Mining,* United States District Judge Glen M. Williams persuasively argues that inequities may arise if non-signatories are not subject to suit under § 301, because state claims for tortious interference are likely preempted.[2] But finding neither the express language nor the legislative history of § 301 indicative of congressional intention to create a reservoir of jurisdiction enabling federal courts to remedy inequitable conduct by persons who are not parties to a labor contract, this court respectfully declines to follow *Eastover Mining.*

The congressional intent of § 301 was first examined by the Supreme Court in *Textile Workers,* 353 U.S. at 452–56, 77

S.Ct. at 915–918. In *Textile Workers,* a union entered into a collective bargaining agreement with an employer. The agreement provided that there would be no strikes or work stoppages and also provided procedures for handling grievances, which permitted either party to request arbitration. The employer refused to arbitrate several grievances concerning work loads and work assignments, and the union brought suit in district court to compel arbitration. Concluding that it had jurisdiction, the district court ordered the employer to arbitrate in accordance with the grievance arbitration provisions of the agreement. The Court of Appeals for the Fifth Circuit reversed. Although the court of appeals concluded that the district court had jurisdiction, it nevertheless held that the district court "had no authority founded either in federal or state law to grant the relief." *Textile Workers,* 353 U.S. at 449, 77 S.Ct. at 914. The Supreme Court found to the contrary and reversed.

The Supreme Court began its inquiry by quoting the express language of § 301 of the LMRA, 29 U.S.C. § 185, which provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall

---

**1.** In *Fox v. Mitchell Transport, Inc.,* 506 F.Supp. 1346, 1349 (D.Md.), *aff'd mem.,* 671 F.2d 498 (4th Cir.1981), another district court in the fourth circuit reached the opposite result of *Eastover Mining. Eastover Mining,* however, found *Fox* not to be controlling precedent. 623 F.Supp. at 1144 n. 2.

**2.** UMWA makes the same argument here:
Were federal jurisdiction to take up the claim under § 301 not recognized, parties wrongful-

ly interfering with the relations of parties to a labor agreement would enjoy immunity from suit under state and federal law alike. This Court properly understood *Allis–Chalmers [Corporation v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ] as weighing heavily against such an undesirable result. *Eastover Mining Co., supra,* 623 F.Supp. at 1144.
Plaintiff's Memorandum at 3.

be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

The court noted two conflicting views concerning the effect of § 301(a). According to the first view, § 301(a) "merely [gave] federal district courts jurisdiction in controversies that [involved] labor organizations in industries affecting commerce, without regard to diversity of citizenship or the amount in controversy." *Textile Workers*, 353 U.S. at 450, 77 S.Ct. at 914. Under this view, § 301(a) was not a source of substantive law. According to the second view, "§ 301(a) is more than jurisdictional...." *Id.* at 450–51, 77 S.Ct. at 914–15 (footnote omitted). Under the second view, § 301(a) authorizes "federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements...." *Id.* at 451, 77 S.Ct. at 915. The Supreme Court agreed with the second view.

Before the enactment of § 301, a crazy-quilt of state and federal decisions governed the enforcement of labor contracts against labor unions. Suits by and against unions frequently resulted in the determination that the labor union was not an entity subject to suit. Section 301 was enacted against this historical backdrop. In reviewing the legislative history of § 301, the Supreme Court noted that "[b]oth the Senate Report and the House Report indicate a primary concern that unions as well as employees should be bound to collective bargaining contracts," and a "broader concern—a concern with a procedure for making such agreements enforceable in the courts by either party." *Id.* at 453, 77 S.Ct. at 916. According to the Court, § 301 "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can

best be obtained only in that way." *Id.* at 455, 77 S.Ct. at 917.

After discerning the primary purpose of § 301(a), the Court turned its attention to the question of applicable substantive law and concluded that federal courts should develop federal common law from the policies of our national labor laws. The Court stated:

> We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. [Citation omitted.] The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. [Citation omitted.] Federal interpretation of the federal law will govern, not state law. [Citation omitted.] But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. [Citation omitted.] Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights.

*Id.* at 456–57, 77 S.Ct. at 918.

The Supreme Court's conclusion "that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws," is the most often quoted language said to support creation of a tortious interference claim. But this court does not find that such a broad reading of *Textile Workers* is justified.

 The issues in *Textile Workers* were whether there was jurisdiction over a suit for arbitration of a grievance as provided in a collective bargaining agreement and whether the district court had authority,

either under federal or state law, to grant relief. An enormous leap is required to find support in *Textile Workers* for a claim against a third party for tortious interference. It is one thing to say that Congress intended for federal courts to apply federal law in contract enforcement actions. It is quite another thing to say that Congress intended to invest federal courts, courts of limited jurisdiction, with power to create torts against persons who are not parties to labor contracts, bridled only by policies which we believe Congress had in mind in enacting "our national labor laws." Neither the historical context in which § 301 was enacted nor its legislative history supports such a broad reading. More fundamentally, such a reading flies in the face of the express language of § 301. That section extends jurisdiction only to "suit[s] for violation of contracts between an employer and a labor organization...." It is axiomatic that only a party to a contract can violate that contract. A contract governs only the conduct of the parties who have agreed to its terms. A non-party who interferes with the performance of a contract has not violated its terms. It follows that this court is without jurisdiction under § 301(a) and possesses no authority to develop federal common law for tortious interference by non-signatories.[3]

## II

■■■ Having decided that it is without jurisdiction under § 301(a), the court must decide whether UMWA's state law tortious interference claim should be dismissed for lack of jurisdiction or dismissed with prejudice as preempted. If the claim is not preempted, it must be dismissed for lack of jurisdiction. If it is preempted, it must be dismissed with prejudice. Although the court has concluded that it lacks jurisdiction over the § 301 claim, it retains jurisdiction to decide the preemption question. *See Washington v. Union Carbide Corp.,* 870 F.2d 957 (4th Cir.1989). The court finds that UMWA's state law tortious interference claim is preempted and, accordingly, dismisses the claim with prejudice.

Although courts have reached varying conclusions as to the preemptive reach of § 301, the courts generally agree that if breach of contract is an essential element of a state tortious interference claim, then the claim is preempted. *See Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir.1990) (considering tortious interference claim in light of *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). *But see Dougherty v. Parsec, Inc.,* 872 F.2d 766, 770 n. 4 (6th Cir.1989). In Virginia, breach of contract is an essential element of a claim for tortious interference. *Century–21 v. Elder,* 239 Va. 637, 641, 391 S.E.2d 296, 298 (1990). UMWA's tortious interference claim is, accordingly, preempted.

## III

For the reasons stated above, UMWA's § 301 tortious interference claim and its pendent tortious interference claim are dismissed. In reaching this result, however, the court has not left UMWA without a remedy for the conduct alleged in the complaint. If signatory employers have "abrogated and repudiated their obligations" and have "recommenced operations under different corporate names," suit may be

---

3. The court believes that its conclusion is consistent with precedent from the court of appeals. *Sine v. Local No. 992, Int'l Bhd. of Teamsters,* 730 F.2d 964 (4th Cir.1984), is instructive. In *Sine,* two employees brought suit against their local union, Local 992, and the Eastern Conference of Teamsters claiming that they had not been properly represented in a grievance. *Id.* at 966. Affirming the dismissal of Eastern Conference as a party, the court of appeals stated:

> Section 301 provides a cause of action for breach of a bargaining agreement. Consequently, suit may be brought only against the parties to the contract. The local, not the

conference, was the contracting party. Where, as here, the local is designated as the exclusive bargaining agent responsible for representing employees in the prosecution of grievances, only the local can be held responsible.

*Id.* (citation omitted). Although *Sine* involved different facts, the lesson is the same. Section 301 provides a cause of action for breach of a collective bargaining agreement. It creates a cause of action and establishes jurisdiction over contract enforcement actions. An action against a non-signatory for tortious interference is not a contract enforcement action.

brought under the alter ego doctrine. As stated in *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489 (5th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983):

> Although a bona fide successor is not in general bound by a prior collective bargaining agreement, an alter ego will be so bound. *NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 269–70 (10th Cir.1980). This is because an employer will not be permitted to evade its obligations under the NLRA by setting up what appears to be a new company, but is in reality a "disguised continuance" of the old one. *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942). *See also Howard Johnson Co. v. Detroit Local Joint Executive Board*, 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974) (when "a mere technical change [is made] in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws ... the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor.").

*Id.* at 507.