INTERNATIONAL UNION, UNITED
MINE WORKERS of AMERICA,
Plaintiff–Appellant,

v.

COVENANT COAL CORPORATION;

William B. Simmons; Jack Simmons;
Bill Simmons; Dennis Simmons;
George Kidd; Ron Jackson; Bernard
Simmons, Defendants–Appellees.

No. 91–2078.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1992.

Decided Oct. 15, 1992.

As Amended Nov. 2, 1992.

Judith Ann Scott, United Mine Workers
of America, Washington, D.C., argued
(Robert H. Stropp, Jr., United Mine Work-
ers of America, Washington, D.C., James J.
Vergara, Jr., Vergara & Associates, Hope-
well, Va., on brief) for plaintiff-appellant.

Gardner G. Courson, Glass, McCullough,
Sherrill & Harrold, Atlanta, Ga., argued
(Allen W. Groves, Glass, McCullough, Sher-
rill & Harrold, Atlanta, Ga., Robert M.
Galumbeck, Deannis Simmons, Dudley, Ga-
lumbeck & Simmons, Tazewell, Va., on
brief), for defendants-appellees.

Before WIDENER and HAMILTON,
Circuit Judges, and ELLIS, United States
District Judge for the Eastern District of
Virginia, sitting by designation.

OPINION

ELLIS, District Judge:

This appeal calls upon this court to de-
cide whether a federal court has jurisdic-
tion under section 301 of the Labor Man-
agement Relations Act (the "LMRA"), 29
U.S.C. § 185, to entertain a claim of tor-
tious interference with a collective bargain-
ing agreement in which defendants are
non-signatories of that agreement. Appel-
lant, the International Union, United Mine
Workers of America (the "Union"), appeals
from the district court's dismissal of its
action, pursuant to Federal Rule of Civil
Procedure 12(b)(6), for failure to state a
claim upon which relief could be granted.
759 F.Supp. 1204. The district court based
its ruling on a finding that it lacked juris-
diction under section 301 because none of
the defendants were parties to the relevant

collective bargaining agreement. The district court also dismissed a pendent state law claim, ruling that the cause of action was preempted by section 301 of the LMRA. We affirm.

## I.

In reviewing a district court's dismissal of a case pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept the truth of the facts as alleged in the plaintiff's complaint. *See, e.g., Goldstar (Panama) S.A. v. United States,* 967 F.2d 965 (4th Cir. 1992). Those facts are as follows:

For several years prior to 1987, the Union represented coal miners employed by five contract mining companies in the Greasy Creek area of Tazewell County, Virginia. These companies operated pursuant to contract mining agreements they had negotiated with certain subsidiaries of The Pittston Company, including Jewell Ridge Coal Corporation ("Jewell Ridge"). Each company was also a party to a collective bargaining agreement with the Union—most recently, the National Bituminous Coal Wage Agreement of 1984 (the "1984 NBCWA").

In November 1986, defendant Covenant Coal Company ("Covenant") entered into a sublease with Jewell Ridge, thereby acquiring the coal production rights on the Greasy Creek properties. Despite their knowledge of the collective bargaining agreements between the contract mining operators and the Union, Covenant and the other defendants, individual directors and officers of Covenant,[1] required the mining operators to repudiate their union contracts and then resume operations on a non-union basis, disguising their identities by changing their corporate names.

On May 25, 1990, the Union filed suit against Covenant in federal district court in the Western District of Virginia. The Union's complaint alleged a federal cause of action, under § 301 of the LMRA, for tortious interference with the collective bargaining agreement between the Union and the mining operators. The complaint also alleged a pendent state claim, under the law of Virginia, for tortious interference with the contract. The district court granted Covenant's motion for dismissal of the case, ruling that section 301 of the LMRA did not confer federal jurisdiction for tort claims against non-signatories of a collective bargaining agreement. The court also ruled that the Union's state claim was preempted by section 301. The Union appeals both rulings.

## II.

Section 301 of the LMRA provides in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185. In *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that Congress intended this provision to be more than jurisdictional in nature, and instead, that the provision authorized the federal courts to fashion a body of common law related to the enforcement of collective bargaining agreements. In reaching this conclusion, the Court noted that:

> some [situations] will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Id.* at 457, 77 S.Ct. at 918. In the present case, the Union invites us to utilize our "judicial inventiveness" to authorize a federal cause of action, emanating from section 301, for tortious interference with a collective bargaining agreement. We de-

---

1. One defendant, Bernard Simmons, was neither an officer or director of Covenant, but was the father of one of the directors and the brother of three other directors. For the sake of clarity, hereinafter all defendants will be referred to collectively as "Covenant."

cline to do so. Like the district court, we find that our inventiveness in this area must ultimately be constrained by the plain language of the statute.

■ The question of whether section 301 of the LMRA confers federal jurisdiction to hear claims against non-signatories of a collective bargaining agreement for tortious interference with that agreement has occasioned a split in the circuits. The majority of courts to address the issue have refused to construe section 301 in such a way as to allow this type of action. *See, e.g., United Food and Commercial Workers Union, Local No. 1564 v. Quality Plus Stores, Inc.,* 961 F.2d 904 (10th Cir.1992); *Service, Hospital, Nursing Home & Public Employees Union, Local No. 47 v. Community Property Services, Inc.,* 755 F.2d 499 (6th Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985); *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489 (5th Cir.1982); *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982); *Bowers v. Ulpiano Casal, Inc.,* 393 F.2d 421 (1st Cir.1968); *Aacon Contracting Co., Inc. v. Ass'n of Catholic Trade Unionists,* 276 F.2d 958 (2d Cir.1960), *aff'g and adopting* 178 F.Supp. 129 (E.D.N.Y.1959). Two circuits, however, have authorized tortious interference claims against non-signatories. *See Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Committee,* 707 F.2d 1067, 1070–71, n. 2 (9th Cir.1983), *cert. denied,* 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984); *Wilkes–Barre Publishing Co. v. Newspaper Guild of Wilkes–Barre, Local 120,* 647 F.2d 372 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).[2]

We find the majority position to be the more persuasive. Our analysis begins, as always, with the plain language of the provision. Section 301 authorizes "[s]uits *for violation of* contracts between an employer and a labor organization. . . ." 29 U.S.C. § 185 (emphasis added). Applying the most natural interpretation of this language, we find that a suit against a non-signatory of a contract cannot be considered a suit for violation of the contract. As the court below reasoned, "It is axiomatic that only a party to a contract can violate that contract. A contract governs only the conduct of the parties who have agreed to its terms." 759 F.Supp. at 1208. *Accord, Pratt–Farnsworth,* 690 F.2d at 500–502. The Union's complaint does not at any point allege that Covenant itself violated the terms of a collective bargaining agreement to which it was a party. As a result, we find that the Union's claim does not fall within the scope of section 301 of the LMRA.[3]

In support of the contrary position, that section 301 authorizes tortious interference claims against non-signatories, the Third Circuit, in *Wilkes–Barre,* noted that tortious interference claims often require a court to interpret a collective bargaining agreement to determine whether there has been a breach of the agreement. The court argued that federal jurisdiction must be inferred in such situations to avoid inconsistent state court interpretations of collective bargaining agreements. 647 F.2d at 380 ("It is the need for national uniformity in determining the scope of obligation agreed to in labor contracts that determines whether a federal standard is appli-

---

**2.** The law of the Eleventh Circuit on this topic is unclear. An earlier case apparently condoning tortious interference claims against non-signatories, *Local 472, United Ass'n of Journeymen & Apprentices v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982), has subsequently been contradicted by decisions of that court, without reference to that opinion. *See, e.g., Xaros v. U.S. Fidelity & Guarantee Co.,* 820 F.2d 1176, 1181 (11th Cir.1987) ("a Section 301 suit may be brought for violation of a labor contract only *against* those who are parties to the contract in issue"); *Laborers Local 938 Joint Health & Wel-*

*fare Trust Fund v. B.R. Starnes Co.,* 827 F.2d 1454 (11th Cir.1987) (same).

**3.** The parties have each advanced interpretations of the legislative history of section 301 in support of their respective positions. We have considered these arguments and the legislative materials and have determined that nothing in the legislative history speaks with sufficient clarity to influence our interpretation of the plain language of the statute.

cable, and which determines, incidentally, that there is concurrent state and federal subject matter jurisdiction.").

With all due respect, we believe this argument puts the cart before the horse. While uniform interpretation of collective bargaining agreements is an important consideration in cases where the federal courts have expressly granted jurisdictional authority, nowhere in the statutory scheme did Congress display an intent to make such concerns determinative of the scope of federal jurisdiction. We decline to allow generalized notions of the benefits of uniform federal interpretation of labor contracts to override the explicit statutory language of section 301 that limits federal jurisdiction to "suits for violation of [labor] contracts." 29 U.S.C. § 185.

Neither do we accept the Union's argument that the Supreme Court's opinion in *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), compels adherence to the minority position. In *Smith,* the Court ruled there was proper jurisdiction under section 301 for an employee's action for damages against his employer, despite the fact that the employee's union, and not the employee himself, was party to the collective bargaining agreement. However, the *Smith* opinion cannot be read, as the Union urges, as a blanket holding that a party's status as signatory or non-signatory of a collective bargaining agreement is irrelevant to the jurisdictional analysis under section 301. Rather, the Supreme Court based its holding in *Smith* on the fact that "individual claims ... are to a large degree inevitably intertwined with union interests." *Id.* at 200, 83 S.Ct. at 270. The Court found that foreclosing jurisdiction under section 301 to individual employees "would stultify" the Congressional policy, which relies on individual claims as "the heart of the grievance and arbitration" process. *Id.; see also Wooddell v. International Brotherhood of Electrical Workers, Local 71,* — U.S. —, — - —, 112 S.Ct. 494, 499–500, 116 L.Ed.2d 419 (1991) (interpreting *Smith* to find jurisdiction, under section 301, for individual union member to sue local union for violation of union's constitution and bylaws).

The reasons advanced by the *Smith* court for construing section 301 to provide jurisdiction for the claims of individual workers carry no weight with regard to allowing claims against non-signatory defendants for tortious interference with a labor contract. Unlike the employees in *Smith,* non-signatory defendants have no representation in the collective bargaining process and receive no benefit from the ensuing contract. *See Wooddell,* — U.S. at —, 112 S.Ct. at 500 (explaining the result in *Smith* on the grounds that union members are "the beneficiaries of provisions of collective bargaining agreements"). Simply put, the rationale supporting non-signatory plaintiffs in *Smith* does not support allowing suit against the non-signatory defendants in the present case. The *Smith* decision must be read as a limited exception, applicable only to employees of a signatory union, to the more general rule that section 301 litigants must be parties to the relevant bargaining agreement.

Although this court has not previously addressed the precise issue presented here, the prior precedent of this circuit clearly foreshadows our holding in this case. In *Sine v. Local No. 992, Int'l Brotherhood of Teamsters,* 730 F.2d 964 (4th Cir.1984), two union members brought suit under section 301 against their local union and the international union of which the local was a member, alleging that they had been improperly represented. This court affirmed the district court's dismissal of the suit against the international union, on the ground that the local union, rather than the international union, was party to the collective bargaining agreement. In reaching our decision we stated, "Section 301 provides a cause of action for breach of a bargaining agreement. Consequently, suit may be brought only against the parties to the contract." *Id.* at 966. While the statement in *Sine* was made in the context of a duty of fair representation dispute rather than a tortious interference with contract claim, we believe that the principle enunciated in *Sine* applies with equal force in the

present case. Because Covenant was not a party to any agreement with the Union, it cannot be sued under the jurisdiction established by section 301. *See also Fox v. Mitchell Transport Inc.*, 506 F.Supp. 1346, 1349 (D.Md.), *aff'd mem.* 671 F.2d 498 (4th Cir.1981).[4]

### III.

The district court also dismissed the Union's pendent claim, under Virginia state law, for tortious interference with contract, ruling that the action was preempted by section 301. The law is clear that "an application of state law is preempted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988); *see also McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 534–35 (4th Cir.1991) (en banc). Conducting this inquiry involves examining the separate elements of the state law cause of action to determine whether resolution of any element requires interpretation of the collective bargaining agreement. *McCormick*, 934 F.2d at 531.

The Virginia cause of action for tortious interference with contract requires four elements:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Century 21 v. Elder*, 239 Va. 637, 641, 391 S.E.2d 296 (1990) (citing *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985)). Clearly, the third element of this cause of action, requiring a breach or termination of the contractual relationship, necessitates interpretation of the agreement. Only by interpreting a contract can a court determine whether the contract has been breached. Because the Union's state cause of action would require a court to interpret the collective bargaining agreements between the Union and the mining companies to determine whether Covenant's actions had caused a breach of those agreements, the Union's state claim must be found to be preempted by section 301 of the LMRA.[5]

We are cognizant of the apparent paradox, inherent in our decision of this case, holding that section 301 of the LMRA bars a federal cause of action for tortious interference with contract, yet simultaneously preempts the identical state law cause of action. This result is not as harsh as it would initially appear, however, because the Union is not left without a remedy. First, the Union remains free to bring suit directly against the mining companies for breach of the bargaining agreements. Second, and more closely analogous to the present action, the Union retains the right to proceed against Covenant by means of an unfair labor practice charge before the

---

**4.** The majority of district courts within this circuit that have addressed this issue have reached the same conclusion we reach in the present case, albeit not in the context of a tortious interference claim. *See, e.g., Allied Mechanical Contractors, Inc. v. Industrial Relations Council*, 685 F.Supp. 552, 565 (W.D.N.C.1988) ("Only parties to the collective bargaining agreement can be brought into suits premised upon Section 301 of the LMRA."); *Fabian v. Freight Drivers & Helpers Local No. 557*, 448 F.Supp. 835, 838 (D.Md.1978) ("It is axiomatic ... that a § 301 suit may be brought only against those who are parties to the contract in issue."). One district court has found that § 301 properly encompasses tortious interference claims. *See International Union, UMWA v. Eastover Mining Co.*, 623

F.Supp. 1141 (W.D.Va.1985). For the reasons outlined above, we reject this holding as inconsistent with the language of § 301.

**5.** There is no merit to the Union's argument that the district court was obligated to dismiss the pendent claim without prejudice as a result of the dismissal of the federal claim. While nonprejudicial dismissal would have been permissible under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), it was not compelled. *See, e.g., Washington v. Union Carbide Corp.*, 870 F.2d 957, 959–60 (4th Cir.1989) (court had jurisdiction of pendent state claim, after dismissal of sole federal claim, to determine potential preemption under § 301 of the LMRA).

National Labor Relations Board.[6] Because an adequate forum exists for resolution of the Union's claims, we discern no injustice in the finding that section 301 of the LMRA serves both to bar a federal cause of action for tortious interference with a collective bargaining agreement against a non-signatory of that agreement, and to preempt a similar cause of action premised on state law. For the foregoing reasons, the order of the district court is hereby

AFFIRMED.

---

**6.** In fact, subsequent to the briefing in this case, an administrative law judge of the National Labor Relations Board issued a decision in *Simmons Bros. Coal Corp., et al. and United Mine Workers of America, District 28*, 1991 NLRB LEXIS 1284 (October 9, 1991). The NLRB decision required certain of the Respondents in those proceedings, including all of the defendants in the present action, *inter alia*, to (1) "make employees whole for any losses sustained by them as a result of Respondents' failure to pay them wages and fringe benefits provided for and set forth in the 1984 NBCWA;" (2) "cease and desist from ... [f]ailing and refusing to pay contractually required wages to employees, and failing to remit, on behalf of its employees the contractually required payments to the UMW health and welfare and pension trust funds;" and (3) "cease and desist from ... [f]ailing to recognize and bargain collectively in good faith [with the Union.]" *Id.*, slip op. at 56–57. In short, with the exception of punitive damages, the Union has now won in another forum the entire measure of relief it sought in the present action.