Cora SMITH, Plaintiff.

v.

Bernard LOGAN, Defendant.

No. 3:04CV581.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 5, 2004.

Lisa Kim Newstein Lawrence, Barbara Allyn Queen, Todd Michael Gaynor, Lawrence & Associates, Richmond, VA, for Cora Smith, plaintiff.

Robert Francis Holland, McGuireWoods LLP, Richmond, James Patrick McElligott, Jr., McGuireWoods LLP, Norfolk, VA, for Bernard Logan, defendant.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER comes before the Court on Plaintiff, Cora Smith's Motion to Re-

mand filed on September 17, 2004, pursuant to 28 U.S.C. § 1447(c) and Defendant, Bernard Smith's Motion to Dismiss filed on August 20, 2004. For the reasons stated below, Plaintiff's Motion to Remand is DENIED and Defendant's Motion to Dismiss is GRANTED.

## I.

Plaintiff worked as a customer service associate for Verizon from July 15, 1967, until July 14, 2002. Plaintiff would have been employed with Verizon for thirty-five years on July 15, 2002. Defendant was the manager/supervisor for Plaintiff's workgroup. Plaintiff is a member of the collective bargaining unit represented by CWA local union.

Plaintiff went on short term disability on July 6, 2001, and intended to come back to work on July 15, 2002. While out on leave, Plaintiff discovered that Verizon was planning on conducting a workforce adjustment which would offer an Enhanced Income Security Plan ("ISP" or "Plan" or "EISP") to all employees who voluntarily retired prematurely. All ISP benefits are offered pursuant to the provisions in the collective bargaining agreement.

Under company policy, each workgroup's budget would be affected by the number of employees who accepted the ISP offer. Each workgroup's supervisor's individual work bonus is linked to and affected by their management of their respective budgets. Since Plaintiff worked for Verizon for over thirty years, she would have been able to collect an ISP income offer of $66,000, the largest in her workgroup. Plaintiff asserts that because she stood to collect a large ISP offer, Defendant's bonus would be significantly decreased.

Plaintiff contacted two of Verizon's human resources representatives, Lisa Adams and Jackie Scott, to determine how she could work until her thirty-fifth work anniversary and still take part in the ISP offer. Plaintiff alleges that Adams and Scott advised her to use her excused absences and a floating holiday to cover the time from when her disability leave ended on July 14, 2002, until the ISP offer began on July 17, 2002. Plaintiff further alleges that Adam and Scott later conferred with Defendant and determined that Plaintiff could not use her excused absences and floating holiday to bridge the gap. Plaintiff claims that Adam and Scott told her that Defendant suggested she use her accrued vacation time to bridge the gap. Plaintiff did not return to work on July 15, 2002, because of this advice. However, Verizon's Collective Bargaining Agreement ("CBA") forbids the use of accrued vacation to extend a disability leave of absence. (*See* CBA Art. 31 §§ 6,7).

On July 17, 2002, Verizon announced that enrollment in the ISP would be available from July 17, 2002, until August 15, 2002. An employee accepted for the ISP offer would have to continue employment until August 24, 2002. Plaintiff sent her ISP election documents to the Verizon Claims Review Committee on July 22, 2002. Plaintiff's application was denied because the offer was only available to employees who were employed on July 17, 2002, and the Verizon records indicated that her employment was self-terminated on July 14, 2002.

On July 15, 2004, Plaintiff filed a two count Motion for Judgment against Defendant in the Circuit Court for the City of Richmond claiming that Defendant tortiously interfered with her business expectancy or contractual relations. Plaintiff seeks $66,000 for lost prospective profits, punitive damages, and compensatory damages. On August 13, 2004, Defendant removed this action to the United States District Court for the Eastern District of

Virginia based on federal question jurisdiction. Judge Richard L. Williams recused himself from this case on October 5, 2004. On October 6, 2004, the case was reassigned to Judge James R. Spencer after Judge Robert E. Payne recused himself. Defendant filed a Motion to Dismiss on August 20, 2004. Plaintiff filed a Motion to Remand on September 17, 2004. Oral argument was held in this matter on October 26, 2004.

## II.

■ Because the Court must first decide whether or not it has proper subject matter jurisdiction over this case before it can make substantive determinations, Plaintiff's Motion to Remand will be addressed first. A court must remand a case back to state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 18 U.S.C. § 1447. The party who is seeking removal bears the burden of establishing jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The district court will have subject matter jurisdiction over a civil action if there is complete diversity of citizenship or a federal question exists. 28 U.S.C. §§ 1331, 1332.

■ A district court has federal question jurisdiction if the civil action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] cause of action arises under federal law when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–113, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). A federal defense, such as preemption, may not form the basis for removal. *Caterpillar, Inc. v. Williams*, 482

U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, if a state law cause of action has been *completely* preempted by federal law, any claim based on the completely preempted state law is considered a federal claim arising under federal law. *Id.* at 393, 107 S.Ct. 2425.

## III.

Plaintiff alleges that remand is proper because her complaint seeks damages arising under Virginia tort law, not under the Employee Retirement Income Security Act ("ERISA") or the Labor Management Relations Act ("LMRA").

### A. *Whether Plaintiff's State Law Claims are Completely Preempted by ERISA*

■ State law causes of action may either be "completely preempted" or "conflict preempted" by ERISA. Pursuant to section 502(a) of ERISA (" § 502(a)"), a participant or beneficiary can bring a civil action to recover benefits due under an employment benefit plan. 29 U.S.C. § 1132(a). Causes of action that fall within the scope of the civil enforcement provisions of § 502(a) are completely preempted and thus can be removed to federal court. *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2496, 159 L.Ed.2d 312 (2004) (quoting *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. 1542). Section 514 of ERISA (" § 514") determines the scope of state laws conflicting with ERISA. "Conflict preemption" or "ordinary preemption" under § 514 does not provide a basis of federal removal, but "provides a defense to a state law claim that may be asserted in state court." *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir.2003).

Plaintiff argues that her claims do not fall within the scope of § 502(a)'s civil enforcement provisions; therefore, removal

was improper because her claims are not preempted. The Supreme Court has held that a state law claim will be completely preempted by ERISA if the person could have brought the claim under § 502(a)(1)(B) and there is "no independent legal duty that is implicated by the defendant's actions." *Aetna Health, Inc.,* 124 S.Ct. at 2496. Under the Fourth Circuit's articulation of the test for complete preemption under § 502(a), the plaintiff must have (1) standing, (2) the claim must fall within the scope of an ERISA provision that can be enforced through § 502(a), and (3) the claim must not be capable of resolution without interpretation of the contract governed by federal law. *Sonoco Products Co.,* 338 F.3d at 372 (applying test articulated in *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir.1996)).

Plaintiff argues that she does not have standing to bring an ERISA claim because she is not a plan participant or beneficiary. Plaintiff states that she is not a "participant or beneficiary" because she was not allowed to join the Plan after her retirement became effective on July 14, 2002, three days before eligibility for the Plan began. Furthermore, Plaintiff asserts that she would not likely prevail in a suit for benefits against Verizon because the company no longer employs her.

■ A participant is defined as "any employee or former employee of an employer...who is or *may become eligible* to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7) (emphasis added). Therefore, the issue of whether Plaintiff has standing as a "participant" within the meaning of § 502(a) turns on whether she "may have become eligible" for an ERISA benefit. An employee "may become eligible" for benefits if they have a "colorable claim

that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A claim will be colorable if it is "arguable and nonfrivolous." *Davis v. Featherstone,* 97 F.3d 734, 737–38 (4th Cir. 1996). Plaintiff has presented a "colorable" claim for benefits which is arguable and non-frivolous.

Since the Court finds that Plaintiff does have standing under § 502(a), the next inquiry is whether Plaintiff is seeking to enforce an ERISA benefit. At issue in this case is whether Plaintiff is seeking to enforce a benefit under § 502(a)(1)(B) or § 502(a)(3).

Plaintiff asserts that she is not seeking a right or benefit under the Plan. A party may bring a civil action under § 502(a)(1)(B) if they are a:

> (1) Participant or beneficiary...(B) to recover benefits due him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

§ 502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B). Plaintiff argues that her claim does not fall within the scope of § 502(a)(1)(B) because she is bringing suit for a legal duty independent of ERISA, not a wrongful denial of benefits under an ERISA plan.

Plaintiff claims that the complete preemption rationale articulated in *Aetna Health, Inc.* does not apply in this case because it is factually different. In *Aetna Health, Inc.,* individuals brought suit against Aetna, their HMO, because Aetna refused to cover certain healthcare treatments in violation of Texas's duty of care statute. *Aetna Health, Inc.,* 124 S.Ct. at 2492. The Court held that the plaintiff's cause of action was preempted by

ERISA and thus removable to federal court. *Id.* at 2493. In the case at bar, Plaintiff argues that her case is distinguishable because Defendant is not a plan administrator who failed to carry out the responsibilities of the plan. Plaintiff asserts that Defendant was not acting on behalf of the company, but was acting on his own behalf to gain private benefits at her expense. Plaintiff argues that Defendant should be held liable for violating his duties as a citizen of the Commonwealth of Virginia under the common law.

■ Plaintiff cannot deny the fact that she is seeking benefits under ERISA simply because she chooses to sue an officer or employee of the company and not the company. *See e.g. Sokos v. Hilton Hotels Corp.,* 283 F.Supp.2d 42, 50 (D.D.C.2003) ("noting that preemption by the LMRA cannot be avoided because the plaintiff's tortious interference claim is only against [Hilton's Director or Property Operations]"); *Hillard v. Dobelman,* 774 F.2d 886, 887 (8th Cir.1985) ("A plaintiff cannot avoid federal preemption by naming an individual supervisor rather than the employer, as defendant in an action arising from the collective bargaining agreement."). Plaintiff is seeking to recover a benefit she believes is due to her under the Plan. The very nature of Plaintiff's claim, tortious interference with contractual right or business expectancy, indicates that the benefit she wishes to recover is what she would have recovered under the ISP offer$66,000. Therefore, Plaintiff's tortious interference claim is seeking a benefit under § 502(a)(1)(B).

Plaintiff further argues that she is not seeking a benefit under § 502(a)(3). A claim under this section may be brought by:

(3) a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

§ 502(a)(3); 29 U.S.C. § 1132(a)(3). Plaintiff states that the phrase "provisions of this subchapter" in § 502(a)(3) refers to ERISA section 510 (" § 510") which states, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the benefits plan, [or ERISA]." 29 U.S.C. § 1140.

Plaintiff asserts that none of her claims fall within the ambit of § 510, because she was not discharged, fined, suspended, expelled, disciplined, or discriminated against as a participant or beneficiary. However, Defendant argues that Plaintiff's claim does fit within the conduct described in § 510 because she is essentially arguing that Defendant constructively discharged her by misleading her to believe that her employment status would continue beyond July 14, 2002.

Plaintiff argues that she was not seeking a claim based on "constructive discharge." Plaintiff asserts that under Virginia law, constructive discharge will be found by showing (1) deliberateness of the employers actions and (2) the intolerability of the working conditions. *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1353–54 (4th Cir.1995). Plaintiff states that she is not claiming that any of those elements occurred; she is arguing that she was tricked into prematurely retiring and was not permitted to retire in a manner which made it possible to obtain enhanced benefits.

■ It is clear that Plaintiff is not alleging a state law claim for constructive discharge. However, her claims do fall within the parameters of §§ 502(a)(3) and 510. The crux of Plaintiff's Complaint alleges that Defendant had the specific "purpose of interfering" with her rights under the ISP. Plaintiff's claims for tortious interference are essentially seeking to stop the harm that was done to her when she unintentionally "retired" on July 14, 2002. The fact that Defendant may have "tricked" Plaintiff into retiring prematurely instead of firing her does not affect the fact that her employment was discharged before she desired. Accordingly, Plaintiff is seeking a benefit under §§ 502(a)(3) and 510.

■ The third consideration for the Court is whether Plaintiff's claim is capable of resolution without interpretation of the ERISA plan. Plaintiff contends that her claims can be resolved without reference to the ERISA regulated ISP plan and therefore, do not "relate to" the plan. Plaintiff states that she is not seeking any interpretation of an employee benefits plan because she is suing Defendant in his individual capacity for interfering with her ability to engage in contractual and prospective business relations. She states that her claim is a tort claim reserved to the province of the state.

Plaintiff argues that the existence of plan documents is incidental to establishing liability under her state law claims. Plaintiff states that this claim is simply a traditional tortious interference suit which seeks to correct the intentional wrongs to the property rights of another. *See e.g. Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985). She asserts that her claims involve purely tortious interference issues because she is seeking a legal remedy for Defendant's tortious interference with her business expectancy or opportunity. *See e.g. Masco Contractor Servs. East, Inc. v.*

*Beals*, 279 F.Supp.2d 699 (E.D.Va.2003). Plaintiff asserts that preemption of her claim is not warranted simply because the ISP plan is referred to in order to assess the amount of damages. In *Coyne & Delany Co. v. Selman*, the court stated:

> To be sure, resolution of [plaintiff's] malpractice claim will require an examination of certain provisions in the [employee benefit plan].... However, we do not believe this fact carries much weight in this context.... [Plaintiff's] claim, although it may require the court to examine some provisions of an ERISA plan, turns on duties generated by Virginia common law.

98 F.3d 1457, 1472 (4th Cir.1996) (internal citation omitted). Plaintiff asserts that because her claims turn on duties imposed on citizens by Virginia common law, the reference to the ISP plan does not provide a ground for preemption.

Plaintiff further argues, relying primarily on *Coyne & Delany Co.*, 98 F.3d at 1457, that her state law claims exist irrespective of any rights and duties under an ERISA plan because it imposes a duty of care on all citizens to the Commonwealth of Virginia not to tortiously interfere with contracts. In *Coyne & Delany Co.*, the Fourth Circuit considered whether a state law malpractice claim brought by a plan sponsor against an insurance professional for allegedly failing to procure proper replacement insurance for an ERISA regulated plan was preempted by § 514(a). *Id.* at 1466–67. The court held that the state malpractice action was not preempted because the duty of care did not depend on ERISA in anyway and the existence of the plan was not critical to liability under the claim. *Id.* at 1471–72 ("The state law at issue in this case imposes a duty of care on all professionals.... Common law imposes the duty of care regardless of whether the malpractice involves an ERISA

plan....Thus, the duty of care does not depend on ERISA in any way.").

Plaintiff's state law claims are not capable of resolution without interpreting the ISP because she must prove breach of contract to establish a claim of tortious interference. *Int'l Union UMWA v. Covenant Coal Corp.*, 759 F.Supp. 1204, 1208 (W.D.Va.1991) ("In Virginia, breach of contract is an essential element of a claim for tortious interference."). In a claim for tortious interference, a plaintiff must prove "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship had been disrupted." *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting *Chaves*, 230 Va. at 120, 335 S.E.2d at 102). Accordingly, interpretation of the ISP is not merely incidental to Plaintiff's claims because she cannot prove "breach or termination of the [contractual] relationship" without interpreting the ISP. *See Century–21 v. Elder*, 239 Va. 637, 641, 391 S.E.2d 296, 298–99 (1990) (stating that intentional interference inducing or causing a breach or termination of the relationship or expectancy is an element of a tortious interference claim).

In order to resolve Plaintiff's tortious interference claims, the Court would have to look to the terms of the Plan to see if she had a contractual right or expectancy, whether the Plan was breached, and whether Defendant's conduct was improper. Since Plaintiff's claims are not governed by a legal duty independent of the ERISA plan, her claims are completely preempted by § 502(a). Therefore, removal of Plaintiff's claims is proper.

### B. Whether Plaintiff's State Law Claims are Completely Preempted by § 301 of the LMRA

■■■■ Even if Plaintiff's claims were not completely preempted by ERISA, removal to this Court was proper because Plaintiff's claims are completely preempted by the Labor Management Relations Act of 1947 ("LMRA"). Section 301 of the LMRA (" § 301") gives United States district courts jurisdiction over claims for violations of contracts between an employer and a labor organization. 29 U.S.C. § 185(a). Section 301 will preempt state law claims only if resolution of the state law claim depends on the interpretation of a collective bargaining agreement ("CBA"). *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–406, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Therefore, when considering whether preemption applies, a court must look at whether the state law cause of action gives rights independent of any right established in the CBA or whether the claim is inextricably linked with the terms of the CBA. *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1397 (4th Cir.1994) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)); *see also Childers v. The Chesapeake and Potomac Tel. Co.*, 881 F.2d 1259, 1262 (4th Cir.1989) (stating that once a court determines that a colorable state law cause of action has been made, the court must determine if the state law claim is independent of the CBA and thus not preempted).

Plaintiff states that she has alleged a colorable state law claim for tortious interference. Plaintiff contends that her state law causes of action are not completed preempted by § 301 because reference to the CBA is not necessary to determine whether Defendant's conduct was wrongful under Virginia state law for tortious inter-

ference. In *McCormick v. AT&T Tech., Inc.*, the plaintiff brought state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, and negligence in care of bailment after his employer carelessly disposed of the contents of his work locker after he was discharged. 934 F.2d 531, 535 (4th Cir.1991). The court reasoned that "state tort claims were preempted where reference to a collective bargaining agreement is necessary to determine whether a duty of care exists or to define the nature and scope of that duty." *Id.* at 536. The court then determined that the rightfulness or wrongfulness of plaintiff's employer's conduct was not committed to the common law of tort, but to the legal arrangements embodied in the CBA. *Id.*

Plaintiff argues that unlike in *McCormick*, Defendant's actions are wrongful because of a duty of care created by the principles of state tort law, not one defined by the terms of a CBA. Plaintiff asserts that Defendant cannot point to any term in the CBA that deals with intentional torts committed among coworkers or that would authorize Defendant to interfere with Plaintiff's private contractual rights and prospective business relations to further his own personal financial goals. *Caterpillar, Inc.*, 482 U.S. at 397 n. 10, 107 S.Ct. 2425 ("Claims bearing no relationship to a collective bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301."). Plaintiff contends that reference to the CBA is not necessary to determine whether Defendant violated duties imposed on him by Virginia common law tortious interference claims.

Plaintiff's reliance on *McCormick* is misplaced. In *McCormick*, the plaintiff brought claims for intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, and negligence in care of bailment. The court reasoned that each cause of action turned on some type of conduct (outrageous and intolerable action, negligence, and wrongful exercise) that the plaintiff needed to prove was wrongful under the circumstances. *McCormick*, 934 F.2d at 535–36. Plaintiff's claim for tortious interference is not a cause of action based predominantly on a duty or standard of care like the cause of actions raised by the plaintiff in *McCormick*.

■ Plaintiff's claims for tortious interference are preempted by § 301 because they require interpretation of the CBA. First, the ISP was offered pursuant to the provisions of the CBA. Second, in order to establish a tortious interference claim, Plaintiff must show (1) a valid contractual relationship or business expectancy exists; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves*, 230 Va. at 120, 335 S.E.2d at 102. Accordingly, the bulk of Plaintiff's claims turn on whether Defendant's interference caused a breach with her contractual right or business expectancy. *Covenant Coal Corp.*, 759 F.Supp. at 1208 ("In Virginia, breach of contract is an essential element of a claim for tortious interference."). Since breach of contract is an essential element of tortious interference, resolution of Plaintiff's claim requires interpretation of the ISP. *Int'l Union UMWA v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992) (The third element of a tortious interference claim requires plaintiff to show a breach of a contractual relationship and "only by interpreting a contract can a court determine whether a contract has

been breached."). Therefore, Plaintiff's claim is preempted by the LMRA and the Court retains jurisdiction over this case.

### IV.

Since the Court has found that it has federal subject matter jurisdiction to hear this case because Plaintiff's claims are completely preempted by ERISA and the LMRA, it must decide whether her claims should be dismissed with prejudice. The function of a motion to dismiss is to test the law governing claims, not the facts which support them. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering such a motion, the Court must presume that all factual allegations in the complaint are true. *See Puerto Rico ex. rel. Quiros v. Alfred L. Snapp & Sons*, 632 F.2d 365 (4th Cir.1980). All reasonable inference must be made in favor of the non-moving party. *See Johnson v. Mueller*, 415 F.2d 354 (4th Cir.1969). The Court should not dismiss any count unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *See Doby v. Safeway Stores, Inc.*, 523 F.Supp. 1162 (E.D.Va.1981).

Claims made under § 301 of the LMRA must be filed within a six month statute of limitations period. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying the six month statute of limitation period of § 10(b) of the National Labor Relations Act to suits claiming a breach of a CBA); *see McCormick*, 934 F.2d at 538. Plaintiff did not file her claim until July 15, 2004, and the cause of action for her claim accrued sometime in July 2002. Since Plaintiff has not filed her claim within the six month statute of limitation period, her Complaint is DISMISSED WITH PREJUDICE.

### V.

Plaintiff's claim is completely preempted by ERISA and the LMRA, therefore, the Court has federal jurisdiction to adjudicate her claims. For the reasons stated above, Plaintiff's Motion to Remand is DENIED and Defendant's Motion to Dismiss is GRANTED.

### *FINAL ORDER*

THIS MATTER comes before the Court on Plaintiff's Motion to Remand filed on September 17, 2004, and Defendant's Motion to Dismiss filed on August 20, 2004. For the reasons stated in the accompanying Memorandum Opinion, Plaintiff's Motion to Remand is DENIED, and Defendant's Motion to Dismiss is GRANTED. Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE.

Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.