**Crystal R. JACKSON, Plaintiff–Appellant,**

v.

**Randy KIMEL; AT & T Technologies, Inc., Defendants–Appellees.**

No. 91–2396.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 1992.

Decided April 30, 1993.

---

Robert J. Lingle, Moore & Brown, Melvin F. Wright, Jr., Wright, Parrish, Newton & Rabil, Winston–Salem, NC, argued (B. Ervin Brown, II, Moore & Brown, Winston–Salem, NC, on brief), for plaintiff-appellant.

Max Daniel McGinn, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, argued (William P.H. Cary, Brooks, Pierce, McLendon, Humphrey & Leonard, R. Cameron Cooke, Walker, Warren, Blackmon, Younce, Dowda, White, Cooke & Tisdale, Greensboro, NC, on brief), for defendants-appellees.

Before PHILLIPS, WILKINS, and WILLIAMS, Circuit Judges.

## OPINION

WILLIAMS, Circuit Judge:

Crystal R. Jackson filed suit in North Carolina state court asserting a claim for intentional infliction of emotional distress against her former supervisor, Randy Kimel, as well as claims premised on principles of respondeat superior and negligent retention against her former employer, AT & T Technologies Corporation. Jackson contended that Kimel coerced her into having sexual intercourse with him by threatening to withhold assistance with certain work-related problems and by impliedly threatening to terminate her employment.

AT & T successfully removed the case to federal district court on the ground that Jackson's claims were preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1988). Finding that Jackson had failed to exhaust the grievance procedures provided in the collective bargaining agreement and that she was unable to satisfy any of the three exceptions to the exhaustion requirement, the district court granted summary judgment to Defendants on all claims.[1] Jackson appeals both the removal to federal court and the grant of summary judgment.

We conclude that Jackson has failed to proffer sufficient evidence to survive summary judgment on her respondeat superior and negligent retention claims against AT & T.[2] We also conclude, however, that Jackson

---

1. In contrast to the Memorandum Opinion issued by the district court, which focuses on failure to exhaust the grievance procedures, the Judgment entered by the district court states that Jackson's claims are barred by the six-month statute of limitations. (J.A. at 223–30.)

2. Because we affirm summary judgment for AT & T on this ground, it is not necessary for us to address whether § 301 preempts the claims against AT & T and whether the removal of these claims was proper. *See Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1263 (4th Cir.

has put forward sufficient evidence to survive summary judgment on her claim of intentional infliction of emotional distress against Kimel, and that § 301 does not preempt this claim. Accordingly, we affirm the grant of summary judgment to AT & T, reverse the grant of summary judgment to Kimel, and remand to the district court for proceedings consistent with this opinion.

## I.

Crystal Jackson was employed by AT & T from May 1973 to February 1987. Throughout her employment she was covered by the terms of a collective bargaining agreement between AT & T and the Communication Workers of America. Jackson's first contact with Randy Kimel was through her position as a union representative. In May 1979, Jackson asked for a three-month personal leave of absence in order to go to Texas and retrieve her son from her estranged husband. Jackson's poor attendance record made her ineligible for personal leave for family reasons. According to Jackson, Kimel assisted her in obtaining a leave of absence under the attendance policy ostensibly to seek employment with AT & T in Texas, even though her actual purpose was to recover her son. Jackson says that around this time period Kimel also assisted her in selecting an automobile for purchase.

In August 1979, Kimel invited Jackson to his home to meet his wife and show his wife Jackson's new car. Kimel's wife was not present when Jackson arrived, and it was on this visit to Kimel's home that Kimel and Jackson first had sexual relations. According to Jackson, Kimel stressed to her how he had assisted her in getting the leave of absence and purchasing her car and that she was indebted to him. Jackson alleges that she resigned from her position as a union representative and later transferred to another department to avoid contact with Kimel. Kimel then transferred to a supervisory position in the same department as Jackson. Jackson also alleges that Kimel stared at her at work, did not allow other employees to talk to her, sent other female employees to solicit sexual favors for him, and that others

at AT & T were aware that she and Kimel were having an affair. Jackson never complained to anyone in AT & T management about Kimel's alleged actions.

Jackson testified at her deposition that she had sexual intercourse with Kimel approximately ten times, with the last time being either late 1984 or early 1985. Jackson alleges that Kimel coerced her into having sexual relations with him in order to protect her job. According to Jackson, Kimel said things like "as much as I've done for you, it would be a shame if you lost your job because of your attendance," (J.A. at 256), which she understood to mean that if she did not have sex with him she would lose her job.

According to Jackson's complaint, in late August or early September 1986, Kimel invited her to go away for the weekend with him to Grandfather Mountain. Jackson refused by telling Kimel that she could not find a baby-sitter for that length of time. In her deposition, Jackson testified that the real reason she did not want to go was that there was too much guilt and stress involved in their relationship. On September 10, 1986, Jackson, along with a union representative, confronted Kimel. Jackson told Kimel that she was not going to meet him anymore and threatened to report their prior affair to the company. Kimel begged her not to tell the company, replaced her supervisor whom she did not like, and told her that he would retire.

Kimel did, in fact, retire the next day. Jackson then took a disability medical leave in September 1986, and her employment with AT & T was terminated in March 1987 when she failed to report to company medical personnel as required by the Disability Plan. Jackson and the union filed a grievance about the termination, which was settled when AT & T agreed to pay Jackson severance pay. Jackson testified that although other employees may have known that she was having an affair with Kimel, she never complained to anyone in the Company about Kimel's actions (other than when she confronted Kimel), until she told the company doctor in December 1986.

1989) (preemption inquiry need not be conducted if a state cause of action is not stated).

## II.

We review the grant of summary judgment de novo. *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. If we determine, after reviewing the record in the light most favorable to Jackson, that AT & T and Kimel are entitled to judgment as a matter of law, then we must affirm the grant of summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In reviewing .the grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court. *Service & Training, Inc. v. Data Gen. Corp.,* 963 F.2d 680, 685 & n. 10 (4th Cir.1992). Although the district court granted summary judgment on the basis of § 301 preemption, we will consider whether Jackson has proffered sufficient evidence to survive summary judgment on her state law claims before addressing whether the claims are preempted. This approach is consistent with *Childers v. Chesapeake & Potomac Tel. Co.,* 881 F.2d 1259, 1263 (4th Cir.1989), where we specifically held that "[t]he § 301 preemption inquiry is predicated on the existence of a colorable state cause of action." We affirm the grant of summary judgment as to Jackson's claims under respondeat superior and negligent retention against AT & T. We reverse the grant of summary judgment on Jackson's intentional infliction of emotional distress claim against Kimel.

### A. *Claims Against AT & T*

Under North Carolina law, an employer may be held liable under the principles of respondeat superior for the tortious acts of its agents in only three situations: (1) when the agent's actions are expressly authorized by the principal; (2) when the action is committed within the scope of the agent's employment and in furtherance of the employer's business; or (3) when the agent's actions are ratified by the principal. *Salley v. Petrolane, Inc.,* 764 F.Supp. 61, 63 (W.D.N.C.1991); *Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 340 S.E.2d 116, 121 (1986).

First, Jackson has not alleged that AT & T expressly authorized Kimel's actions. In fact, AT & T had a written policy prohibiting any type of sexual harassment. With regard to the second situation, North Carolina courts have consistently held that sexual harassment and similar conduct are not in furtherance of the employer's business; rather, in most cases, the conduct is deemed to be for the perpetrator's own licentious purposes. *Salley,* 764 F.Supp. at 63; *Hogan,* 340 S.E.2d at 122. In addition, nothing in Jackson's allegations indicates that Kimel's alleged conduct was committed in furtherance of AT & T's business. Jackson, therefore, is left with only the third path for holding AT & T liable for Kimel's alleged tortious activities: demonstrating that AT & T ratified Kimel's conduct. To establish ratification, Jackson is required to show that AT & T "had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." *Hogan,* 340 S.E.2d at 122.

AT & T argues that Jackson has not put forward sufficient evidence to survive summary judgment on the issue of whether AT & T knew or should have known that Kimel was coercing Jackson into a sexual relationship. We agree. Jackson has alleged that other employees knew of her relationship with Kimel and that Ruby Bailey, her supervisor but also a subordinate to Kimel, both actively encouraged the relationship and was aware that Jackson sometimes resisted Kimel's advances. Neither Jackson nor Bailey, however, ever told any other company official about Kimel's conduct. In our view, knowledge that Jackson's relationship with Kimel was coerced rather than consensual is a "material fact" relative to the wrongful acts alleged. *Id.* That other employees were aware of their relationship and Bailey knew Jackson was not always receptive to Kimel's advances, do not create an inference sufficient to raise a genuine issue

as to whether AT & T knew or should have known that she was being coerced into a sexual relationship with Kimel. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (an issue of fact must be genuine to preclude the grant of summary judgment and the non-moving party must do more than 'show that there is some metaphysical doubt as to the material facts').

Jackson contends that under *Davis v. United States Steel Corp.*, 779 F.2d 209 (4th Cir.1985), all she has to show to survive summary judgment is that AT & T had *any* knowledge of Kimel's actions. In *Davis*, we reversed the district court's application of respondeat superior principles and found that summary judgment was not appropriate. *Id.* at 212. We do not agree that *Davis* stands for the proposition that evidence of *any* knowledge by AT & T is sufficient to establish respondeat superior liability or that *Davis* is analogous to Jackson's situation.

*Davis* applied South Carolina law to a situation in which the plaintiff had complained to company officials about her supervisor, Bryan, and his harassing behavior. The plaintiff specifically alleged that Bryan's supervisor witnessed several harassing incidents and overheard Bryan's harassing remarks to her. Bryan's supervisor admitted that he witnessed Bryan pat the plaintiff on her posterior, but the supervisor simply took it to be "an innocent friendly gesture." *Id.* In light of these circumstances, we held that a jury could find that the company was liable under the doctrine of respondeat superior because "the matter could be said to have progressed ... to behavior known to United States Steel and condoned by it." *Id.* at 211.

Jackson has alleged that some management employees, and therefore AT & T, knew that she had a sexual relationship with Kimel. The issue with regard to AT & T's liability, however, is whether this knowledge is enough to permit a jury to conclude that AT & T "had a responsibility flowing from [its role as employer] to take necessary corrective action." *Id.* at 212. Jackson has not shown that AT & T had any knowledge that her relationship with Kimel was anything other than a consensual affair. On the contrary, Jackson herself admits that no one

with AT & T knew the nature of their relationship until December 1986, after Kimel had retired and she was on disability leave. Jackson never complained to any AT & T official about Kimel's actions and she can point to no one in AT & T's management who knew or should have known that her relationship with Kimel was anything other than consensual. Though sexual harassment in the work place is clearly unlawful, and employers may be held liable if they fail to take prompt remedial actions to stop any such behavior, we do not believe that employers have a duty to investigate every office romance occurring outside the work place to insure that coercion is not a factor. Something more than mere knowledge by AT & T of the affair itself must be shown in order to establish ratification under respondeat superior principles; Jackson has not shown such knowledge in this case. Therefore, we affirm the grant of summary judgment to AT & T on Jackson's claim for intentional infliction of emotional distress.

■ We also affirm the grant of summary judgment on Jackson's claim against AT & T for negligent retention. In North Carolina, all cases which have allowed claims for negligent retention involved "well-known and certain, ongoing foreseeable harms occurring on the employer's premises while the employee was on duty." *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897, 903 (1991). In *Braswell*, for example, summary judgment was granted to the employer on the negligent retention and supervision claim because the alleged "untoward behavior" occurred outside the work place and the perpetrator was "otherwise known as stable and even-tempered." *Id.* In contrast, the plaintiffs in *Hogan* showed that the defendant company retained the harasser in a supervisory position after "having actual notice of his proclivity to engage in sexually offensive conduct." 340 S.E.2d at 124. This showing in *Hogan* was sufficient for plaintiff to survive summary judgment. *Id.*

Applying the *Braswell* and *Hogan* criteria, Jackson's negligent retention claim fails because the extramarital affair between Kimel and Jackson took place outside work premises, Kimel had no history of prior harassment

which could have put AT & T on notice, and Jackson has not demonstrated that AT & T had any knowledge of Kimel's "unfitness."

## B. *Claim Against Kimel*

### 1. Sufficiency of the claim

■ Jackson has also asserted a claim for intentional infliction of emotional distress against Kimel individually.. In order to support her. claim for intentional infliction of emotional distress under North Carolina law, Jackson must show that Kimel engaged in (1) extreme and outrageous conduct, (2) which was intended to cause and did cause (3) severe . emotional distress. *Hogan,* 340 S.E.2d at 119. Jackson must also demonstrate that the alleged extreme and outrageous conduct occurred within the three-year statute of limitations for intentional infliction of emotional distress claims. *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325, 330 (1981).

■ Kimel argues that under a recent North Carolina case, *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22, 28–29 (1992), we should look only at the acts alleged during the three-year statute of limitations period in determining whether Jackson has stated a claim. The only act alleged within the three-year period prior to the filing of Jackson's complaint is the invitation to go to Grandfather Mountain. Kimel contends that the invitation, alone, is not sufficient to state a claim for intentional infliction of emotional distress. Jackson responds that Kimel engaged in an ongoing pattern of harassment, similar to a continuing violation under Title VII,[3] and therefore we should not limit our review to acts within the three year period.

In *Waddle,* summary judgment was granted on a claim for intentional infliction of emotional distress because the plaintiff, Simpson, failed to demonstrate that any of the conduct of the defendant, Sparks, occurred within the limitations period. 414 S.E.2d at 29. Simpson stated that all of the questionable conduct occurred during her employment, but she could not remember the day, month, or year when any of the conduct occurred. *Id.* In affirming the grant of

summary judgment to defendant Sparks, the North Carolina Supreme Court stated:

> If plaintiff Simpson could have testified that any of the specific incidents with Sparks occurred [within the three year statute of limitations period], her evidentiary forecast of Sparks' conduct would have been sufficient to survive a summary judgment motion based on the statute of limitations. Simpson, however, was not able to state a date—even within a year—when any one of the various specific incidents she alleges against Sparks occurred.

Under *Waddle,* Jackson's allegation that Kimel invited her to go to Grandfather Mountain satisfies the requirement of some specific act alleged to have occurred within the three-year statute of limitations. According to *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325, 336 n. 11 (1981), we can look to acts prior to the three-year period for the context of this invitation, even if those acts are not compensable. 276 S.E.2d at 336 n. 11. Therefore, we hold that the invitation to Grandfather Mountain, when placed in the context of the prior alleged acts, is enough for Jackson's claim to survive summary judgment as to the statute of limitations defense.

■Kimel also argues that because he could not have carried out the threats that Jackson alleges he made (to terminate her employment or to withhold assistance with attendance related problems), her allegations are insufficient to establish either that his conduct was extreme and outrageous or that he intended to inflict emotional distress. Kimel argues that under the collective bargaining agreement, attendance policies, and grievance procedures, he could not possibly have taken any baseless adverse employment action against Jackson. Kimel also asserts that, given Jackson's involvement with the union, the fact that she had previously filed a grievance for harassment against another supervisor, and her admitted knowledge of the attendance policies, the alleged threats could not have been reasonably perceived to have any coercive force. According to Kimel, these facts make it impossible for Jackson to support her claim either that his conduct was

3. 42 U.S.C.A § 2000e–2 (West 1981 & Supp.   1992).

extreme and outrageous or that he intended to inflict emotional distress.

Nevertheless, Kimel asserts no legal authority for his theory that the efficacy of his threats is central to determining whether there is sufficient evidence to support a claim of intentional infliction of emotional distress. Kimel is correct that courts should not determine in a vacuum the extremity or outrageousness of his conduct or his intention to inflict emotional distress. *See McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 535 (4th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992). In our view, however, taking the evidence in a light most favorable to Jackson, as we must, the conduct which she has alleged "may reasonably be found to be sufficiently outrageous as to permit recovery." *Hogan,* 340 S.E.2d at 121. Jackson's perceptions, their reasonableness, and whether an adequate basis existed to support Jackson's belief that Kimel could carry out the coercive actions he threatened are not questions for resolution at summary judgment. These issues are for the jury to consider in determining whether the conduct complained of is sufficiently extreme and outrageous and was intended to cause emotional distress so that liability should result. *Id.* Jackson has stated a claim against Kimel for intentional infliction of emotional distress.

**2. Section 301 Preemption of the Claim**

Next, we must address whether Jackson's claim against Kimel was properly removed to federal court and foreclosed by summary judgment on the ground that it was preempted by § 301. If Jackson's claim against Kimel is preempted by § 301, then summary judgment would be appropriate both because Jackson failed to exhaust her grievance procedures and because Kimel would not be a proper party to a § 301 action.[4]

■ Section 301 authorizes federal courts to hear suits for violations of contracts between an employer and a labor organization or between labor organizations. 29 U.S.C. § 185(a). Section 301 not only gives federal courts jurisdiction to hear employment cases covered by collective bargaining agreements, but also directs them to fashion a body of federal common law to resolve such disputes, *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985), and preempts any state law claims which require the interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). Our recent en banc decision in *McCormick* set out the standards applicable in this Circuit for determining whether a state law claim is preempted by § 301.

In *McCormick* an employee alleged various state law claims, including intentional infliction of emotional distress, based on the employer's disposal of the contents of his work locker upon his discharge. 934 F.2d at 533. We affirmed the ruling that the state law claims were preempted by § 301 because resolution of the claims required interpretation of the collective bargaining agreement to determine if the employer was authorized to act as it did. *Id.* Specifically, we held that "[s]tate tort claims are preempted where reference to a collective bargaining agreement is necessary to determine whether a 'duty of care' exists or to define 'the nature and scope of that duty.'" *Id.* (quoting *International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (1987)). *McCormick* also expanded the defi-

---

4. As an employee of AT & T, Kimel is not a signatory to the collective bargaining agreement and cannot be sued for violation of the collective bargaining agreement except as an agent of AT & T. *See Complete Auto Transit Inc. v. Reis,* 451 U.S. 401, 417, 101 S.Ct. 1836, 1845, 68 L.Ed.2d 248 (1981) (§ 301(a) does not sanction damages actions against individual employees); *Ramsey v. Signal Delivery Serv. Inc.,* 631 F.2d 1210, 1212 (5th Cir.1980) ("The law is well settled that individual employees are not proper parties to a suit brought under § 301.... Rather, § 301 suits are confined to defendants who are signatories of the collective bargaining agreement...."); *Loss v. Blankenship,* 673 F.2d 942, 946–47 (7th Cir. 1982) (agreeing with the reasoning of *Ramsey* and holding that a complaint against an individual employee was not actionable under § 301); *Sine v. Local No. 992, Int'l Bhd. of Teamsters,* 730 F.2d 964, 966 (4th Cir.1984) (§ 301 suit may only be brought against the parties to the contract) *cf. International Union, United Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895, 899 (4th Cir.1992) (company which was not a party to the collective bargaining agreement could not be sued under § 301).

nition of the collective bargaining agreement to a "generalized code," *id.*, and "an industrial common law," *id.* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)), which would include practices and procedures relating to the employment relationship.

Despite the considerable breadth of our opinion in *McCormick*, it does not require preemption of every conceivable claim for intentional infliction of emotional distress which arises from conduct in the work place. In *McCormick*, the key question for determining whether the employer's conduct was wrongful under state tort law was whether the collective bargaining agreement explicitly or implicitly authorized the allegedly wrongful conduct. *Id.* at 537. Basically, the employer's conduct could not be authorized and legal under the collective bargaining agreement and "simultaneously be considered 'outrageous and intolerable' under Virginia law." *Id.* Applying this standard, the claim in *McCormick* was preempted because the determination of whether the acts were wrongful, extreme, and outrageous had to be conducted with reference to the employer's rights and duties under the collective bargaining agreement.

■ Reference to the collective bargaining agreement is not necessary to determine whether Kimel's conduct was extreme and outrageous. His conduct, if it occurred as alleged, is wrongful regardless of whether it was authorized by the collective bargaining agreement. The "coerced-sex-in-exchange-for-job-benefits" Jackson alleged is wrongful under federal law, Title VII, 42 U.S.C.A. § 2000e–2, against the public policy of the state of North Carolina, N.C.Gen.Stat. § 143–422.2 (Michie 1983), and arguably a violation of the criminal laws of the state, *see Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir.1991) (pointing out that North Carolina prohibits prostitution, "includ[ing] the offering or receiving of the body for sexual intercourse for hire," N.C. Gen.Stat. § 14–203, and that "the exchange of sexual intercourse for the valuable economic benefit of a job fits within North Carolina's criminal prohibition"). Nothing in

the collective bargaining agreement could authorize Kimel to coerce sexual favors in exchange for employment benefits. Indeed, if the collective bargaining agreement did authorize such actions, it would not be enforceable as against public policy. *See Allis-Chalmers*, 471 U.S. at 211–12, 105 S.Ct. at 1911–12.

Kimel argues that the claim is preempted because a court would have to refer to the collective bargaining agreement and other employment policies and procedures to determine whether Kimel could carry out the threats he allegedly made. As Kimel argued previously, he contends that the efficacy of his threats is significant in determining whether his actions were extreme and outrageous, whether he intended to inflict emotional distress, and whether Jackson was justified in perceiving the threats as legitimate. While this may be the case, under our analysis in *McCormick*, we do not believe this kind of reference to the collective bargaining agreement is sufficient to preempt the claim under § 301.

Stated in the words of *McCormick*, the question we must ask to determine whether Jackson's claim against Kimel is preempted is whether reference to the collective bargaining agreement is "necessary to determine whether [Kimel had] a 'duty of care' ... or to define 'the nature and scope of that duty.'" 934 F.2d at 536. If Kimel engaged in the actions which Jackson has alleged, his actions would be wrongful not because of a duty of care created or defined by the terms of the collective bargaining agreement, but because of the principles of state tort law. To hold otherwise would mean every tort relating to the work place would be preempted—a result *McCormick* neither supports nor requires.

Other Circuits have reached the same conclusion with regard to similar claims of intentional infliction of emotional distress. In *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133, 134–35 (7th Cir.1987), an employee covered by a collective bargaining agreement brought a claim which included a cause of action for intentional infliction of emotional distress based on a remark made to him by his supervisor during an altercation. The

Seventh Circuit held that the intentional infliction of emotional distress claim was not preempted under § 301 because the tort claim did not purport to give meaning to the terms of the labor contract and in no way depended on interpretation of the labor contract for resolution of the claim. *Id.* at 137. The Seventh Circuit distinguished *Keehr* from other circuit opinions which held that intentional infliction of emotional distress claims were preempted, because under the facts of *Keehr* "the employee's claim revolved around conduct by his employer that is not even arguably sanctioned by the labor contract." *Id.* at 138 n. 6.

The Seventh Circuit clarified in its subsequent decision, *Douglas v. American Information Technologies Corp.*, 877 F.2d 565 (7th Cir.1989), that some intentional infliction of emotional distress claims are preempted under § 301 and some are not. The plaintiff's claims of intentional infliction of emotional distress in *Douglas* were premised on, among other things, her employer's denial of excused work days, denial of handicapped parking, forcing her to file discrimination charges in order to carry over excused days into the next calendar year, and giving her an unjustified final warning. *Id.* at 567. The *Douglas* court observed that the determination of whether conduct is "extreme and outrageous" may "be evident without reference to the terms of a collective bargaining agreement," but found that resolution of the claims in *Douglas* would indeed require a court to interpret the collective bargaining agreement to determine if the allegedly wrongful conduct was authorized under the agreement. *Id.* at 571, 572.

Similarly, in *Hanks v. General Motors Corp.*, 906 F.2d 341 (8th Cir.1990), the Eighth Circuit determined that § 301 did not preempt an intentional infliction of emotional distress claim. The employer in *Hanks* assigned an employee to a supervisor who had been arrested for sexually molesting the employee's daughter. *Id.* at 342. The employer argued that the emotional distress claim was preempted because the employer's primary defense was that the collective bargaining agreement authorized its actions. *Id.* at 343. The Eighth Circuit disagreed, holding that § 301 did not preempt the claims be-cause the plaintiff had not alleged a violation of any duty explicitly or implicitly arising from the collective bargaining agreement, the claims were not "inextricably intertwined" with the agreement, the claims could and must be resolved independent of the collective bargaining agreement, and, finally, because the claims involved duties owed by the employer "to every member of society, not just to employees covered by the collective bargaining agreement." *Id.* at 344; *see United Steelworkers of Am. v. Rawson,* 495 U.S. 362, 371, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (1990); *see also Miller v. AT & T Network Systems,* 850 F.2d 543, 550 n. 5 (9th Cir.1988) (specifically stating that not all claims of intentional infliction of emotional distress are preempted); *Galvez v. Kuhn,* 933 F.2d 773, 780 (9th Cir.1991) (finding an intentional infliction of emotional distress claim not preempted where compliance with the collective bargaining agreement could not "temper the potential outrageousness of the conduct"); *Johnson v. AT & T Technologies, Inc.,* 713 F.Supp. 885, 888 (M.D.N.C.1989) (intentional infliction of emotional distress claim against co-worker based on an allegation of sexual harassment was not preempted because the conduct could not even arguably be sanctioned by the collective bargaining agreement).

In this case, interpretation of the collective bargaining agreement is not necessary to determine whether Kimel owed a duty to refrain from the alleged conduct; the collective bargaining agreement could not authorize his alleged behavior. Therefore, we reverse the grant of summary judgment in favor of Kimel and remand for the district court to consider whether it will exercise its supplemental jurisdiction to address the claim against Kimel or remand the claim to state court. 28 U.S.C.A. § 1367(c)(3) (West Supp.1992)

### III.

In conclusion, we affirm the grant of summary judgment to AT & T on the ground that Jackson has failed to put forward evidence that AT & T is liable for Kimel's alleged harassment under principles of respondeat superior or negligent retention.

Because Jackson has shown sufficient evidence to survive summary judgment on her claim against Kimel, and because her claim is not preempted by § 301, we reverse the grant of summary judgment to Kimel and remand for proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

PHILLIPS, Circuit Judge, specially concurring:

I readily concur in the judgment and in essentially the whole of Judge Williams' opinion for the court. I write separately only to express one reservation—not about anything said in the opinion, but about the necessity to say anything at all about the possibility that Jackson's state-law tort claim against her fellow-employee, Kimel, might be preempted by § 301. If it were appropriate to inquire whether that claim was preempted, I would fully agree with the majority opinion's excellent analysis that under our *McCormick* test it was not. But I don't believe § 301 preemption was possible as to that claim and, in consequence, believe that analysis was properly concluded as to it with the determination that it was not subject to dismissal as a non-colorable state-law claim under our *Childers* rule. *See Childers v. Chesapeake & Potomac Tel. Co.,* 881 F.2d 1259, 1262 (4th Cir.1989).

So far as I know, neither the Supreme Court nor we ever have held that a union employee's state-law tort claim against a fellow-employee that is removed pendent to a joined tort claim against the employer is subject, like the claim against the employer, to being "recharacterized" by preemption as a § 301 claim and so made subject to federal defenses unique to such a claim.[1] *Childers,* which did involve several such removed pendent claims, may be thought to have implied that had those claims been found "colorable" ones under state law they would then have

been subject (along with that against the employer) to § 301 preemption, but that possibility was never directly addressed because all the claims pleaded were dismissed as not "colorable." *See id.* at 1263–67.

Certainly such claims should not be subject to § 301 preemption. When union employees have sought directly to sue fellow employees in § 301 actions, the claims rightly have been dismissed on the obvious basis that as non-signatories to the employer's collective bargaining agreement, such employees are not amenable to claims for that contract's breach. *See* cases cited in majority opinion, footnote 4. It would be anomalous indeed (and not one of those anomalies sometimes forced by policy considerations upon the law) if such a fellow-employee could nevertheless be considered a proper party defendant to a state-law tort claim "recharacterized" by preemption as a § 301 breach of contract action. An almost scandalous consequence would be that by that means a fellow-employee defendant to a meritorious state-law tort action would be enabled, following removal of the pendent claim against him, to defeat it by invoking § 301 defenses (failure to exhaust grievance procedures, short limitations period) that are only available to one who properly can be charged as a signatory with breaching a labor contract.

This court's recent decision in *International Union, United Mine Workers v. Covenant Coal Corp. et al.,* 977 F.2d 895 (4th Cir.1992), which did hold that a pendent state-law claim against a non-signatory to a labor contract is subject to § 301 preemption is—must be—distinguishable. In that case, a union sued a coal company in federal court alleging parallel claims under § 301 and state tort law for tortious interference by the company with the union's collective bargaining agreement with other coal companies. The court first affirmed dismissal of the federal § 301 claim on the basis that as a nonsignatory to the

---

1. None of the Supreme Court decisions establishing the contours of § 301 preemption of state law tort claims involved either original or removed claims against employees in their individual capacities. All are concerned only with the preemption of claims against employers or unions, obviously signatories to the labor contracts at issue. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (employer-defendant); *Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (union-defendant); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (employer-defendant); *United Steelworkers of America, AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) (union-defendant).

union's labor contract, the defendant company was not amenable to suit under § 301. *Id.* at 899. Turning to the pendent state law claim, the court affirmed the district court's holding that it was preempted by § 301. The court reasoned that in order to decide the claim of tortious interference with the labor contract, it would have to be interpreted, thereby meeting our *McCormick* test of preemption. *Id.* Acknowledging the "apparent paradox" of holding on the one hand that a non-signatory was not amenable to a direct suit under § 301, but might nevertheless successfully assert preemption of a pendent state-law claim by virtue of that same provision, the court found solace in the fact that the union was not without other recourse under the special circumstances of the case. It might sue its contracting companies for breach, and in fact had already successfully pressed an unfair labor charge against them. *Id.* at 899, 900.

With all respect, I would read *Covenant Coal*'s preemption holding[2] as narrowly confined to its circumstances that: it involved a federal action in which the primary claim directly invoked § 301 (the claimant in effect "asked for it"), rather than a removed state court action, and it involved a defendant against whom other avenues of relief were available. On this basis, I think it should have no application to the circumstances of this case in which the claimant had not invoked either a federal forum or a federal right, and in which preemption of her state claim would have left her without remedy.

Happily, in this case that ultimate mischief was avoided by the court's proper holding (assuming preemption analysis was required) that the claim against Kimel was not preempted. But that may not happen the next time around, which is my reason for arguing here that the claim against Kimel as a fellow-employee, non-signatory to any collective bargaining agreement, was not subject to preemption.

---

**2.** A holding whose authority, so far as it extends, I must of course acknowledge, but whose cor-

rectness, I have to confess, gives me great doubt.