70 F.3d 112
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael HOGAN, Plaintiff-Appellee,
v.
James CARTER, Defendant-Appellant.
 No. 94-7037.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1995.
Decided Nov. 14, 1995.
Rehearing In Banc Granted; Opinion Vacated Dec. 11, 1995.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-93-150-BO)
 ARGUED: Jacob Leonard Safron, Special Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NORTH CAROLINA, Raleigh, North Carolina, for Appellant. James Phillip Griffin, Jr., NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.
 Affirmed by unpublished per curiam opinion.
 OPINION
 PER CURIAM:
 
 
 1
 On March 8, 1993, Plaintiff/Appellee Michael Hogan, an inmate in the custody of the North Carolina Department of Correction, filed a pro se complaint seeking monetary damages pursuant to 42 U.S.C. Sec. 1983 from Dr. James Carter, Defendant/Appellant, a psychiatrist and "physician on call" covering emergencies for the Mental Health Facility at Central Prison Hospital on the evening of September 20-21, 1992; Gary Dixon, Warden of North Carolina Central Prison; V. Lee Bounds, Secretary of the North Carolina Department of Correction; and John Butler, R.N., Nurse on duty in the Mental Health Facility at Central Prison on the evening of September 20-21, 1992. The North Carolina Prisoner Legal Services filed an Amended Complaint on July 14, 1993, whereupon Appellant filed a motion to dismiss and for summary judgment, which the District Court denied by Order dated August 19, 1994. It is from this order that Appellant appeals, asserting that the district court erred in denying him qualified immunity on the Sec. 1983 claim.
 
 I. FACTS PRESENTED
 
 2
 Appellee, Michael Hogan, is an inmate in the custody of the North Carolina Department of Correction, who, on the evening of September 20-21, 1992, was housed in the Mental Health Facility at North Carolina Central Prison. Dr. James A. Smith, III, Board Certified Psychiatrist and Clinical Director of Mental Health at Central Prison, diagnosed Hogan as having a severe borderline personality disorder with antisocial features. Appellant, Dr. James Carter, a psychiatrist and a tenured Professor in the Department of Psychiatry of the Duke University Medical Center, had treated Hogan in the Mental Health Facility in October, 1991 when he was admitted following an alleged attempt to assault a physician at the Polk Youth Center.
 
 
 3
 On September 20-21, 1992, Dr. Carter was the "physician on call" covering emergencies for the Mental Health Facility. At some point in the early morning of the 21st, John Butler, R.N., Nursing Supervisor for Mental Health East and West at Central Prison, contacted Dr. Carter by phone. He informed Dr. Carter that Hogan had become aggressive, disruptive and uncontrollable, and had been that way for approximately three hours. Based on this information, Dr. Carter authorized four point restraints and a single emergency dose of Thorazine 50 mg. I.M. (intramuscular). Thereafter, Nurse Butler, along with custody staff, entered Hogan's cell at approximately 3:00 a.m., placed Hogan in four point leather restraints, and proceeded to administer an injection of 50 mg. Thorazine to him.
 
 
 4
 After administering the medicine, Nurses Brenda Brewington, L.P.N., and Sherwood Lee, R.N., checked Hogan both for any physical signs of injury and for capillary refill. As set forth in her affidavit, Nurse Brewington asked Hogan if he had received any injuries or had any complaints or discomforts to which she avers that Hogan responded in the negative. (J.A. 45-46).
 
 
 5
 Hogan denies yelling, kicking, being abusive or causing any disturbances whatsoever. He claims that he was talking to two inmates across the hall from him "after bedtime which is 10:30 p.m." (J.A. 5). According to him, Nurse Butler told him if he did not stop talking, he would have him "strapped down." Hogan then indicated that he asked to see the Sergeant in order to report Nurse Butler for having threatened "to strap me down for talking." He further indicated that he continued to talk and, according to Hogan, Nurse Butler had him restrained, strapped down and injected with Thorazine. (J.A. 5-6).
 
 II. DISCUSSION
 A.
 
 6
 The Court reviews a district court's denial or grant of summary judgment de novo employing the same standard applied by the district court under the Federal Rules of Civil Procedure 56(c). Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir.1993); Felty v. Graves-Humphrey Co., 818 F.2d 1126, 1127-1128 (4th Cir.1987). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir.1984).
 
 B.
 
 7
 Qualified immunity protects government officials who perform "discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The right asserted must be clearly established such that "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). For summary judgment purposes, the Court's inquiry is whether, when all facts are viewed in the light most favorable to plaintiff, there is a genuine issue concerning a clearly established Constitutional violation. Turner v. Dammon, 848 F.2d 440, 444 (4th Cir.1988) (citation omitted).
 
 
 8
 Application of the qualified immunity defense requires the Court to make three discrete determinations: (1) the identification of the specific right allegedly violated; (2) the determination of whether the right was "clearly established" at the time of the alleged violation so as to alert a reasonable officer to its Constitutional parameters; and (3) the determination of whether a reasonable official could have believed that his particular conduct was lawful. Collinson v. Gott, 895 F.2d 994, 998 (4th Cir.1990).
 
 
 9
 The essential issue for resolution under qualified immunity is a determination of whether the rights alleged to have been violated were clearly established at the time of the challenged actions. Harlow, 457 U.S. at 1818. If the law supporting the allegedly violated rights was not clearly established, then immunity must lie. Anderson, 483 U.S. at 640; Tarantino v. Baker, 825 F.2d 772, 774 (4th Cir.1987). On the other hand, where the law, as alleged by Appellee, is clearly established, and where no reasonable officer could believe he was acting in accordance with it, qualified immunity will not attach and the district court may deny a motion for summary judgment. The purpose of this doctrine is to ensure that government actors have notice of the extent of constitutional restrictions on their behavior. See Davis v. Scherer, 468 U.S. 183, 195 (1984).
 
 
 10
 In 1990, the Supreme Court clearly established that a mentally ill state prisoner has a significant liberty interest in avoiding the forcible injection of antipsychotic drugs. Washington v. Harper, 494 U.S. 210, 221-22 (1990). This liberty interest is both substantive and procedural.
 
 
 11
 [T]he substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient.
 
 
 12
 Id.
 
 
 13
 The Harper Court held that the State of Washington satisfied the procedural requirement by providing for a separate administrative hearing committee "consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the [mental health facility], none of whom may be, at the time of the hearing, involved in the inmate's treatment or diagnosis." Id. at 215 (internal quotation marks omitted). Moreover, Washington State provides the inmate with twenty-four hours' notice of the hearing, during which time he may not be medicated. Id at 216.
 
 C.
 
 14
 First, there is a genuine dispute as to material facts. While it is undisputed that Nurse Butler informed Dr. Carter that Hogan was aggressive, violent, and otherwise uncontrollable, Hogan has indicated that he was merely talking to another inmate. Furthermore, inasmuch as the record indicates that prison officials claimed that Hogan began his kicking, screaming and disruptive behavior on or before the beginning of the second shift which started at 3 o'clock p.m. on September 20th, but was not forcibly administered the Thorazine until shortly after entering Hogan's cell at 3:00 a.m. on September 21st (J.A. 48-49), there too exists a genuine issue with reference to Dr. Carter's assertion of a valid mental health emergency.
 
 
 15
 Next, it is clear that Hogan has properly stated a claim for the violation of a federal right. Here the specific right allegedly violated was Hogan's right to avoid forced injection of Thorazine, an antipsychotic drug. Appellant cites United States v. Charters, 863 F.2d 302 (4th Cir.1988), as authority to support his entitlement to qualified immunity in light of the professional judgment Appellant exercised as Hogan's treating physician.* Contending and suggesting that Charters is still valid law, notwithstanding the Harper decision, Appellant maintains his right to summary judgment on his claim of qualified immunity.
 
 
 16
 The law, contrary to Dr. Carter's assertion, was clearly established at the time of the alleged violation. The record indicates that prison officials were aware of Harper 's implications and took steps to avoid liability under its holding. On May 15, 1992, only four (4) months prior to the date of the incident in question, Dr. R. Allen Harrop, Chief of the Mental Health Services for the North Carolina Department of Correction (Division of Prisons), rescinded new regulations for the involuntary administration of psychotropic medication because of the then recent court challenges under Harper (J.A. 96-102). Moreover, at the time of the incident in question, the holding in Harper had been reflected and applied in several unpublished judgments and orders both of this court and the very same district court (and division) in North Carolina in which Appellee filed the instant claim. See Peacock v. Adams, No. 89-7695, slip op. (4th Cir. Oct. 1, 1990); Brower v. Smith, No. 89-6700, slip op. (4th Cir. Jan. 13, 1991); and Bell v. Smith, No. 89-566, slip op. (E.D.N.C. Jan. 21, 1992). In all of these decisions, the court pointed out that Charters was no longer the controlling law in light of the ruling in Harper .
 
 
 17
 The inescapable conclusion is that, at the time of the incident in question, the law was clear and settled that forcefully treating an inmate with antipsychotic drugs against his will and without a due process hearing, violated the constitutional rights of the inmate. At this time we decline to specify exactly what Harper requires. We do find that Harper requires more than Charters and more than Hogan recieved.
 
 
 18
 Finally, Dr. Carter insists that a reasonable official in his position would have believed that his conduct was reasonable. In other words, Dr. Carter posits that he had no reason to believe that his actions violated clearly established law, and hence, he is entitled to qualified immunity. The short answer to this is that at the time of the incident giving rise to this claim, correctional and other public mental health officials were on notice that forced medication on inmates without procedural due process violated their constitutionally protected rights. Two occurrences convince the court that Appellant was on notice: (1) the proliferation of similar challenges and court rulings in this circuit following the Harper decision; and (2) the State's rescission four months earlier of its regulations authorizing the involuntary administration of psychotropic medication. This Court believes that a reasonable official in Dr. Carter's position would have known that authorizing the involuntary administration of Thorazine on Hogan, against his will and without any procedural due process, was violative of Hogan's constitutional rights. Because the relevant legal principles governing this claim were clearly established at the time of the incident in question, Dr. Carter is not entitled to summary judgment on his defense of qualified immunity.
 
 III. CONCLUSION
 
 19
 On this basis, the District Court correctly denied appellant's Motion for Summary Judgment. The judgment of the District Court denying Defendant/Appellant Summary Judgment is accordingly
 
 
 20
 AFFIRMED.
 
 
 
 *
 In Charters, this court held that a decision by medical officials [responsible for the inmate] to administer antipsychotic medication over the inmate's objection comports with due process if the decision was made in the exercise of professional judgment