**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TONYA S. IZZARD,
Plaintiff-Appellant,

v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION,
Defendant-Appellee.

No. 96-1315

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1101-A)

Argued: January 30, 1997

Decided: March 17, 1997

Before WILKINSON, Chief Judge, and HAMILTON and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Diane Bodner, SWICK & SHAPIRO, P.C., Washington,
D.C., for Appellant. Christopher Paul Spera, FEDERAL HOME
LOAN MORTGAGE CORPORATION, McLean, Virginia, for
Appellee. **ON BRIEF:** David H. Shapiro, SWICK & SHAPIRO,
P.C., Washington, D.C., for Appellant. Diane M. Ennist, Rufus Mey-
ers, FEDERAL HOME LOAN MORTGAGE CORPORATION,
McLean, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Tonya Izzard appeals the award of summary judgment to her former employer, Federal Home Loan Mortgage Corporation (Freddie Mac), on her claims of race discrimination and retaliatory discharge. See 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a. Finding no error, we affirm the district court.

I.

In October 1992 Freddie Mac hired Tonya Izzard, who is African-American, as manager of technical writing in its marketing and sales division at its headquarters in Fairfax County, Virginia. Izzard was supervised by Bruce Wood until March 1993, when her unit was placed in another section. After the realignment Izzard reported to Sara Leonard. Izzard accuses Leonard of race discrimination.

While under Wood's direction Izzard received a generally favorable work appraisal. However, Wood did note that Izzard needed to improve her interpersonal skills. Specifically, Wood suggested that Izzard concentrate on better understanding the views of those she managed and that she "open listening channels further."

After Izzard began reporting to Sara Leonard in March 1993, Leonard observed the same weaknesses mentioned by Wood. Leonard informed Izzard that several employees were afraid of her. A fellow employee said that during this period there was tension between Izzard and certain clients. In September 1993 Leonard sent Izzard a memorandum that clarified the effectiveness ratings on her "progress review." The memorandum revealed that Izzard's lowest ratings related to her interactions with supervisors, peers, and clients.

Leonard thought the human resources department might be able to improve Izzard's skills by conducting a "team building" program.

2

Human resources representatives Cathy Moore and Linda Medlock began talking with Izzard, Leonard, and employees who reported to Izzard. As a result of these discussions, both Moore and Medlock recommended against the initiation of a team building program. Neither Moore nor Medlock mentioned race discrimination as a problem in Leonard's section.

In March 1994 Leonard again told Izzard that she possessed considerable technical skills but that she still lacked necessary interpersonal skills. In April 1994 Moore and Medlock asked Tonya Jackson, an African-American director at Freddie Mac, to act as Izzard's mentor. After working with Izzard, Jackson suggested to both Izzard and Leonard that Izzard might do better if she remained in the communications section but relinquished her managerial duties.

In late April 1994 Izzard was involved in a car accident. Freddie Mac placed her on short-term disability. After her request for an extension on her short-term disability was denied, Izzard applied for and was given leave under the Family Medical Leave (FML) Act. Pursuant to Freddie Mac's policy, as explained on the FML application, FML was not to exceed twelve weeks. Izzard's FML period began on April 18, 1994, and was due to expire on July 8, 1994.

In May 1994, while still on FML, Izzard received a letter from Leonard stating that Izzard would be moved from her manager position into a staff job. The reassignment would downgrade Izzard from Grade 31/Manager to Grade 28/Technical Editor. In response to this demotion, Izzard filed an Equal Employment Opportunity (EEO) complaint on June 20, 1994, alleging race discrimination. Izzard's demotion was never put into effect because she was terminated immediately following the expiration of her FML.

Before the expiration of the FML period Cathy Moore telephoned Izzard, informed her that the FML period would expire on July 8, 1994, and told her that she was expected to be at work on Monday, July 11. In addition, Moore informed Izzard that she had to obtain medical clearance from her doctor before she could return to work. Izzard did not return to work on July 11, and she was terminated. On that same day Izzard filed her second EEO complaint, alleging that she had been terminated in retaliation for her first EEO complaint.

3

Izzard sued Freddie Mac in district court, claiming that Freddie Mac discharged her because of her race and her prior protected EEO activity. The district court granted Freddie Mac's motion for summary judgment, concluding that Izzard was terminated not because of racial animus, but because she failed to return to work when her FML period expired. Izzard appeals.

II.

We review summary judgment decisions de novo. <u>Jackson v. Kimel</u>, 992 F.2d 1318, 1322 (4th Cir. 1993). If there is no genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Plaintiffs in employment discrimination cases may avoid summary judgment by satisfying the burden-shifting method of proof established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). In an action alleging retaliatory discharge, a plaintiff must meet her initial burden under the <u>McDonnell Douglas</u> scheme by establishing a prima facie case. A plaintiff establishes a prima facie case by showing that (1) she engaged in protected activity, (2) the employer took adverse employment action against her, and (3) there was a causal connection between the protected activity and the adverse action. <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 457 (4th Cir. 1989). "Once this prima facie case is established, it must be rebutted by legitimate non-retaliatory reasons for the adverse action." <u>Id.</u> If the employer provides a legitimate nonretaliatory reason, "the burden of proof lies with the plaintiff to establish by preponderance of the evidence that the proffered reasons are pretextual." <u>Id.</u>

The district court did not state explicitly that Izzard failed to establish a prima facie case of retaliatory discharge. However, our review of the record and briefs leads us to conclude that Izzard failed to meet all elements of her initial burden. Izzard did meet the first two requirements because she had filed an EEO complaint just weeks before her termination. However, she failed to establish a causal connection between the filing of her EEO complaint and her termination.

Pursuant to a policy predating Izzard's first EEO complaint, Freddie Mac grants its employees twelve weeks of FML. Izzard does not allege that the policy itself is discriminatory. Instead, she alleges that

4

Freddie Mac applied the FML policy in a discriminatory manner against her because it required her to obtain medical clearance before returning to work. Izzard asserts that Moore and Leonard were upset by her prior EEO complaint. Therefore, Izzard argues, they created the medical clearance requirement so as to provide a seemingly neutral reason for termination. Izzard's argument does not hold up for several reasons. First, Izzard's FML expiration date was set, pursuant to Freddie Mac policy, before Izzard filed her first EEO complaint. Second, Izzard offered no evidence that medical clearance was not required of other employees on FML. Third, there was no way for Moore, Leonard, or even Izzard to know that Izzard's doctor was not going to grant her medical clearance. Fourth, Leonard, against whom Izzard attributes the bulk of the racial animus, had minimal involvement in administration of the FML program. As the FML expiration date neared, Moore called Leonard and asked whether Izzard could be given a medical leave extension. Leonard responded that she could wait no longer for Izzard's return because a backlog of work had developed and she needed someone to perform Izzard's job. Izzard offered no evidence that Leonard learned of the first EEO complaint and then made up the medical clearance requirement with the expectation that Izzard would be unable to satisfy it, thereby providing a basis for her discharge. We are thus persuaded that Izzard failed to establish a prima facie case of retaliatory discharge because she did not establish a causal connection between her EEO complaint and her termination.

Even if Izzard could establish a prima facie case, she has offered no evidence that the proffered reason for her termination was pretextual. Izzard failed to comply with Freddie Mac's FML policy and was terminated. Therefore, we conclude that the district court did not err when it granted Freddie Mac summary judgment on Izzard's claim of retaliatory discharge.*

_____

*Izzard also brought a claim alleging that her demotion was the product of Leonard's intent to discriminate on the basis of race. Because Izzard was on medical leave when she was notified of her demotion and was terminated before her return, the demotion never actually took effect. We therefore agree with the district court that Izzard has no independent cause of action with regard to the demotion. We have, of course, taken into account the fact of Izzard's demotion. Her first EEO complaint was filed in response to the demotion and it is that EEO complaint, Izzard contends, that prompted Freddie Mac to terminate her. As noted above, Izzard's retaliatory discharge claim is not sustainable.

III.

The district court's award of summary judgment to Freddie Mac is
affirmed.

<u>AFFIRMED</u>

6